NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240221-U

NO. 4-24-0221

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 23JA77 |
| v. | ) | |
| | ) | Honorable |
| Allen H., | ) | Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment, concluding no meritorious issues could be raised on
appeal.

¶ 2    In July 2023, the trial court adjudicated C.S. (born July 2007) neglected and found

his guardian, respondent Allen H., unfit to care for him. (Respondent was previously appointed

C.S.'s guardian in a probate proceeding in the Tazewell County circuit court. C.S.'s mother,

Elizabeth S., was found unfit in a prior juvenile proceeding in the same court and has not been

restored to fitness. The identity of C.S.'s legal father is unknown.)

¶ 3    Respondent appealed, and counsel was appointed to represent him. Pursuant to

*Anders v. California*, 386 U.S. 738 (1967), counsel filed a motion for leave to withdraw,

contending she cannot raise any meritorious issues on appeal. For the following reasons, we

grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5            In May 2023, the State filed a petition seeking to adjudicate C.S. neglected under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2022)). The State alleged C.S. was neglected due to being in an environment injurious to his welfare in that respondent (1) was arrested for possession of cocaine, leaving C.S., who is autistic and nonverbal, at school on a Friday with nobody to pick him up, resulting in him spending the weekend at a teacher's home; (2) was under investigation for possession of child pornography and admitted to police he purchased pornographic images of 15-year-old females; (3) failed to appear for a scheduled drug test; (4) had previous involvement in juvenile court cases; and (5) was on probation and had a criminal history, including convictions for theft and burglary (*id.* § 2-3(1)(b)). The State also alleged that when the Illinois Department of Children and Family Services (DCFS) investigator told respondent he would be taking protective custody of C.S., respondent said he "understood" and had no family members who could take custody. In his answer to the State's petition, respondent "stipulate[d] that the [S]tate could present evidence supportive of the allegations."

¶ 6            The trial court held a shelter care hearing and granted temporary custody of C.S. to DCFS, with the right to place him.

¶ 7            In July 2023, DCFS filed a report in advance of the adjudicatory and dispositional hearings. The report stated C.S. severely injured his foot and underwent surgery. However, after six weeks, he remained in the hospital because no other placement options were available. Visitation between respondent and C.S. was suspended because respondent allegedly groped C.S. in the hospital. Specifically, hospital staff reported seeing respondent wipe C.S.'s genitals with his bare hands after C.S. urinated on himself.

¶ 8        Later that month, the trial court entered an adjudicatory order finding C.S. neglected. The court also entered a dispositional order finding respondent unfit to care for C.S. "based on the totality of [the] circumstances." The court noted respondent's substance abuse and the pending investigation into the incident at the hospital. The court made C.S. a ward of the court and placed his guardianship and custody with DCFS. Respondent was ordered to have no contact with C.S. until the investigation was complete. If the report was unfounded, DCFS could then initiate supervised visitation.

¶ 9        In January 2024, DCFS filed a report in advance of a permanency review hearing. Respondent had been indicated for the incident at the hospital. Accordingly, there continued to be no visitation between C.S. and respondent.

¶ 10        The trial court held the permanency review hearing later that month. The State moved to discharge respondent as a party to the case pursuant to *In re C.C.*, 2011 IL 111795, 959 N.E.2d 53, because he was no longer C.S.'s guardian. While respondent's counsel did not object, counsel noted "children can be returned to a former guardian" and respondent "would be more than happy to become the guardian once again." The court granted the State's motion and discharged respondent as a party to the case.

¶ 11        This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13        Appellate counsel seeks to withdraw on the basis she cannot raise any arguments of potential merit.

¶ 14        The procedure for appellate counsel to withdraw set forth in *Anders* applies to proceedings under the Act. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8, 65 N.E.3d 1009. Counsel's request to withdraw must " 'be accompanied by a brief referring to anything in the

record that might arguably support the appeal.' " *In re S.M.*, 314 Ill. App. 3d 682, 685, 732 N.E.2d 140, 143 (2000) (quoting *Anders*, 386 U.S. at 744). Counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why [s]he believes the arguments are frivolous." *Id.* Counsel must then conclude the case presents no viable grounds for appeal. *Id.*

¶ 15    In her supporting memorandum, appellate counsel states she has considered whether there are any meritorious arguments challenging (1) the adjudicatory order, (2) the dispositional order, or (3) respondent's dismissal as a party to the case. Appellate counsel concluded any such arguments would be frivolous. Appellate counsel states she has reviewed the record on appeal, and her brief demonstrates she has reviewed the report of the adjudicatory, dispositional, and permanency review proceedings. Appellate counsel provided proof of service of her motion and a supporting memorandum to respondent. This court granted respondent the opportunity to file a response. Respondent has not done so.

¶ 16                          A. The Adjudicatory Order

¶ 17    Appellate counsel considered challenging the adjudicatory order on appeal but concluded no meritorious argument exists that the trial court's order was against the manifest weight of the evidence or that the court otherwise abused its discretion.

¶ 18    Before a minor may be made a ward of the court, the minor must be found to be abused, neglected, or dependent. *In re A.P.*, 2012 IL 113875, ¶ 19, 981 N.E.2d 336. Section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2022)) defines a neglected minor as any minor "whose environment is injurious to [his] welfare." While the term "injurious environment" is often characterized as an amorphous concept that cannot be defined with particularity, it has generally been recognized as including "the breach of a parent's duty to ensure a safe and

nurturing shelter for his or her children." (Internal quotation marks omitted.) *In re J.C.*, 2012 IL App (4th) 110861, ¶ 30, 966 N.E.2d 453. "A trial court's ruling regarding neglect *** will not be disturbed unless it is against the manifest weight of the evidence." *In re Davion R.*, 2019 IL App (1st) 170426, ¶ 78, 124 N.E.3d 527. "The court's determination is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.*

¶ 19        Here, C.S. is a nonverbal, autistic minor who was left at school with no one to pick him up after respondent was arrested for cocaine possession. As a result, C.S. had to spend the weekend at a teacher's home. Respondent was under investigation for possession of child pornography, admitted to police he purchased such images, and stipulated the State could present supporting evidence. Moreover, respondent had no family members who could take custody of C.S. The trial court adjudicated C.S. neglected for being in an environment injurious to his welfare. Under the circumstances of this case, the opposite conclusion was not clearly evident. Thus, the court's adjudicatory order was not against the manifest weight of the evidence. We agree any argument challenging the adjudicatory order would therefore be frivolous.

¶ 20                        B. The Dispositional Order

¶ 21        Appellate counsel considered challenging the trial court's dispositional order but concluded any such argument would be frivolous.

¶ 22        After a minor has been found abused, neglected, or dependent, the trial court must conduct a dispositional hearing. *A.P.*, 2012 IL 113875, ¶ 21.

> "At the dispositional hearing, the court shall determine whether it is in the
> best interests of the minor and the public that the minor be made a ward of
> the court, and, if the minor is to be made a ward of the court, the court shall

determine the proper disposition best serving the health, safety[,] and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2022). Under section 2-27(1)(d) of the Act (*id.* § 2-27(1)(d)), a proper disposition includes placing guardianship and custody with DCFS if the minor's guardian is found to be unfit to care for him. "The trial court's determination will be reversed only if the factual findings are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order." *In re Kamesha J.*, 364 Ill. App. 3d 785, 795, 847 N.E.2d 621, 630 (2006).

¶ 23 Here, the trial court found respondent unfit to care for C.S. given the "totality of [the] circumstances." The circumstances in this case included respondent's substance abuse, as well as an ongoing investigation into the incident in the hospital where he wiped C.S.'s genitals with his bare hands. The court's factual findings as to respondent's unfitness were not against the manifest weight of the evidence. Additionally, we cannot say granting guardianship and custody of C.S. to DCFS was an inappropriate dispositional order. Respondent had a substance abuse problem, was under investigations for possession of child pornography and inappropriately touching C.S. in the hospital, and had no family members who could take custody of C.S. The court did not abuse its discretion in placing C.S.'s guardianship and custody with DCFS. We agree with counsel any argument challenging the dispositional order would be meritless.

¶ 24 C. Discharging Respondent as a Party

¶ 25 Appellate counsel considered appealing respondent's discharge from the case on the grounds it (1) terminated his ability to participate in services, (2) terminated his right to court-appointed counsel, and (3) was not in C.S.'s best interest. However, counsel concluded no appealable issue could be raised.

¶ 26    The Act provides a minor's guardian the right to court-appointed counsel. 705 ILCS 405/1-5(1) (West 2022). Additionally, the Act provides guardianship "continues until the court otherwise directs." *Id.* § 2-27(5). As our supreme court has noted, "once the [trial] court directs the removal or dismissal of a guardian, that individual no longer is a guardian." *C.C.*, 2011 IL 111795, ¶ 33. "[A] former guardian is not a guardian and, thus, no longer is a party respondent to the proceedings following [his] dismissal from that position and is no longer entitled to legal representation as provided for in the statute." *Id.* Under the Act, "[t]he best interests of a minor are relevant in determining legal custody or guardianship of the minor [citation] and in reviewing the appointed legal custodian or guardian of the minor." *Id.* ¶ 40. However, the "named parties" in section 1-5(1) "are listed as necessary parties without regard to whether it is in the minor's best interests to have those individuals participate in the proceedings." *Id.* ¶ 38.

¶ 27    Thus, while C.S.'s best interest was relevant to whether respondent would remain his guardian, it was not relevant to whether he could remain a party to the case after the trial court granted guardianship to DCFS. See *In re V.C.*, 2022 IL App (4th) 210484, ¶ 32, 196 N.E.3d 1203 ("Pursuant to the reasoning set forth in *C.C.*, *** the trial court *** erred in allowing [V.C.'s grandparents] to remain parties to the proceedings after it found it was in the best interest of V.C. to be made a ward of the court and appointed DCFS as her guardian."). We therefore agree any argument regarding respondent's discharge following DCFS's guardianship of C.S. would be frivolous.

¶ 28                                    III. CONCLUSION

¶ 29    For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 30          Affirmed.